IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JLS, INC.,

           Plaintiff,

v.    CIVIL ACTION NO. 2:07-cv-00586

PUBLIC SERVICE COMMISSION OF
WEST VIRGINIA,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the Motion to Intervene as Defendant filed by D&L Limousine, Inc, *et al.*, [Docket 13], and the Motion to Intervene as Defendant filed by Williams Transport, *et al.* [Docket 25]. In their respective motions, the proposed intervenors argue that they are entitled to intervene as of right based on Fed. R. Civ. P. 24(a)(2). For the reasons that follow, the motions are **DENIED**.

**I.    Background**

The plaintiff, JLS, Inc., is a motor passenger carrier registered with the Federal Motor Carrier Safety Administration (FMCSA). (Compl. ¶ 5.) Its "exclusive business" is comprised of transporting railroad employee train crew members in motor vehicles to and from different points along railroad lines. (*Id.*) JLS filed a declaratory judgment action against the West Virginia Public Service Commission (PSC). It seeks an order from this court declaring that its proposed activities – "including moves wholly within West Virginia" – are "'interstate' transportation, and therefore subject to federal, not state, jurisdiction." (Compl. ¶¶ 45, 5.) The proposed intervenors are engaged

in similar activities, including wholly intrastate transportation of passengers. Each alleges that, under Fed. R. Civ. P. 24(a)(2), they are permitted to intervene as of right because they claim an interest in the transaction that is the subject of the action, that the PSC cannot adequately represent their interest, and that relief in this action may impair or impede the intervenors ability to protect the interest.

**II.     Standard**

A court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In addition, the proposed intervention must be timely. *See* Fed. R. Civ. P. 24(a) (permitting mandatory intervention "[o]n timely motion"); *see also Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (same). I will address each requirement in turn.

**III.    Discussion**

*A.     Timeliness*

The proposed intervenors filed their respective motions to intervene within two to three months after the plaintiff instituted suit. The plaintiff does not argue that the proposed intervenors untimely filed their respective motions to intervene. The court therefore **FINDS** that the proposed intervenors have sought intervention in a timely fashion.

*B.     Interest Relating to the Property or Transaction in Dispute*

The intervenors argue that they each possess significant protectable interests in the pending litigation because they have a financial stake in the outcome of the litigation. (*See* Docket 14, p.4;

Docket 26, pp.3-4.) The proposed intervenors attach affidavits which attest to the economic interest that they believe could be harmed by a judgment in favor of the plaintiff. The affidavits further describe the proposed intervenors' claims of possessing more detailed knowledge of the goings on of the market rail crew transportation within the West Virginia. They argue that this case involves the extent of PSC jurisdiction over intrastate rail crew transportation. Should the PSC lose, they argue, the plaintiff will be able to enter the market without being subject to the PSC licensing provisions, without complying with the PSC's rules, and without objection from entities like the proposed intervenors.

The plaintiff argues that the proposed intervenors lack the interest required under Fed. R. Civ. P. 24(a)(2), and that they seek to lard this action with issues extraneous to the core question of whether the plaintiff's proposed actions are interstate in nature, and thus preempted by federal statute, or intrastate in nature, and thus subject to regulation by the PSC. The plaintiff argues that the sole interest the proposed intervenors possess is their interest in maintaining a regulatory barrier to entry into the market for rail crew transportation. Such an interest, they claim, is a mere contingent economic interest which does not satisfy Rule 24(a)(2).

The Supreme Court has explained that the interest Rule 24(a)(2) contemplates is "a significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Although the phrase is helpful, it "has not been a term of art in the law and there is sufficient room for disagreement about what it means." 7C Wright, Miller & Kane § 1908.1 (3d ed. 2007). Like the Supreme Court, the Fourth Circuit has not had the occasion to fully explicate the term's meaning.

The parties direct the court to *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991). In *Teague*, the court addressed whether a party who has a claim against an insured defendant may

intervene in an action by an insurance company against the insured. *Id.* at 260. After noting a split in authority on whether a party has a Rule 24(a)(2) interest when it possesses a contingent interest, the court sided with the reasoning that an "interest [that] is contingent on the outcome of other litigation" is sufficient for Rule 24(a)(2) purposes. *Teague* is distinguishable in several respects. First, the intervenor in *Teague* was inextricably intertwined in the declaratory judgment action because the intervenor triggered the coverage dispute that culminated in the declaratory judgment action. *Teague*, 931 F.2d at 261. Second, the *Teague* intervenors stood to benefit directly from the coverage question, which seemed to color the court's determination that an interest existed. *See id.* at 261 ("the Teague Intervenors stand to gain or lose by the direct legal operation of the district court's judgment on ERC's complaint"); *see also id.* at 261-62 ("If [the insurance company] prevails in this declaratory judgment action, the [intervenors] would have to satisfy their judgment from other assets of the insureds and the existence and amount of such assets are questionable."). The contingency in *Teague* was thus the *extent* of the declaratory judgment's impact on the intervenors (*i.e.*, the extent it either increased or decreased the pool of assets), not *whether* the declaratory judgment would impact the intervenors. *Id.* at 261-62.

Though the Fourth Circuit has not addressed the precise question whether a party subject to a state regulation may possess an interest adequate to support intervention as of right under Rule 24(a)(2) in an action where another party has sought declaratory judgment that enforcement violates the constitution, other courts have. In *Walgreen Co. v. De Melecio*, the plaintiff filed suit against the Secretary of the Puerto Rico Department of Health, challenging "the statutory regime governing the means by which pharmacies are licensed in Puerto Rico." 194 F.R.D. 23, 25 (D.P.R. 2000). The plaintiff alleged that the Secretary "applied the statute and its accompanying regulations in a manner

that . . . puts an unconstitutional burden on interstate commerce." *Id.* at 25. An association "established to promote the interests of independent pharmacies owned by residents of Puerto Rico" sought to intervene as of right, claiming an interest based two grounds: (1) the interest arising out of its members' participation in cases pending under the regulatory regime, and (2) a general interest "because regulations to which its members are subject are being challenged by this lawsuit." *Id.* at 25-26.

The court denied the proposed intervenor's motion, finding that the proposed interest was unconnected and unclear:

> Asociación claims that one of the purposes of Walgreens' suit is to eliminate the involvement of Asociación's members in the administrative process. This is an inaccurate description of the present case. Walgreens is suing for a declaratory judgment that the Secretary Feliciano's application of the law and its regulations are unconstitutional. The suit is not intended to prevent Asociación members from obtaining permits under the statutory scheme.
>
> The gist of Asociación's argument is that its interest in this administrative process is heightened because its members are regulated by it and because some members are parties in currently pending cases. There may be cases where interest in an administrative proceeding may be sufficient to establish the necessary interest. This does not, however, appear to be one of them. If Walgreens loses this case, the Asociación will have suffered no loss. And if Walgreens wins and obtains all the relief it seeks, including an injunction prohibiting the enforcement of the law, it is not clear what harm Asociación members will have suffered. Those members that are currently operating pharmacies will presumably continue to be able to do so. Any members who are currently in the midst of the application procedure will be forced to wait for a new or modified regime to be implemented before they can obtain permits. . . . Thus, any harm is too contingent in nature to establish an interest.

*Walgreen Co.*, 194 F.R.D. at 26 (internal citations omitted).

In this case, the proposed intervenors' connection to benefit or harm is much more attenuated than the risk posed in *Teague*, 931 F.2d at 261, and much more like the association's relationship in *Walgreen Co*. If JLS prevails in this case, the marketplace will, according to the proposed intervenors, become more competitive for rail crew transportation. If the PSC prevails, the status

quo will remain and the intervenors will enjoy a state-facilitated barrier to new entrants into the market for rail crew transportation. The effect of market forces and the potential for increased competition in this case do not present the direct, substantial connection to the underlying case that the *Teague* intervenors faced where the pool of assets available for their recovery was directly connected to the insurance coverage action. Furthermore, this case is unlike other cases where a party challenges regulations that control an entire industry and will be effected by whatever comes of the challenged regulation. *See, e.g., Ohio Valley Environmental Coalition v. U.S. Army Corps of Engineers*, 243 F.R.D. 253, 255 (S.D. W. Va. 2007). Rather, the intervenors could use a decision in their argument for similar treatment, but would not automatically be subject to a different set of rules because of this court's disposition. The court therefore **FINDS** that the proposed intervenors lack the interest required by Rule 24(a)(2) to trigger intervention as of right.

## C.    *Adequate Representation by Existing Parties*

The proposed intervenors also allege that the PSC will not adequately represent their interests in the suit. They argue that the PSC does not possess the knowledge of the rail crew transportation business that the proposed intervenors do, and that the PSC may well acquiesce to the plaintiff's argument that its business remains in interstate commerce because it will result in less work for the PSC. They argue that their participation in the case will enable the court to fully engage the issues because of their superior knowledge of the fact and industry. I disagree.

While the *reasons* that the PSC and the proposed intervenors wish to uphold the PSC's regulatory ability in this case differ (*e.g.*, intervenors wish to have insulation from competition, while the PSC has an institutional interest in defining its jurisdiction), they share in the ultimate *goal* (*i.e.*, characterizing the plaintiff's action as intrastate to support PSC jurisdiction). As the Fourth

...
...
...

Circuit has held "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). The proposed intervenors have not alleged collusion or nonfeasance. Because this court has already determined that the proposed intervenors do not possess an adequate interest, any effort to determine whether the intervenors have demonstrated interests that are adverse would be academic.

Even if their interests were adverse, the intervenors would still be unable to overcome the presumption that the PSC may adequately represent their interests in this action. Moreover, as I have indicated above, the question is not whether the PSC has jurisdiction over intrastate commerce. It does. The question this case presents is whether the actions of the plaintiff are conducted in interstate, or intrastate, commerce. The intervenors' knowledge of how they conduct business is therefore irrelevant to that question. The court therefore **FINDS** that the PSC will adequately represent the interests present in the case, as it has ably demonstrated by its participation to date.

**IV.     Conclusion**

For those reasons, the court **DENIES** the D&L Limousine, Inc.'s parties' Motion to Intervene [Docket 13], and the Williams Transport parties' Motion to Intervene [Docket 25]. The D&L Limousine, Inc.'s parties' Motion to Extend Time to Respond to Motion for Summary Judgment [Docket 16], Motion to Strike [Docket 20], and Motion to Dismiss [Docket 29] are **DENIED** as moot. The plaintiff's Motion to Strike Response in Opposition [Docket 37], and Motion to Strike Response in Support [Docket 40] are **DENIED** as moot.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       February 11, 2008

_____
Joseph R. Goodwin, Chief Judge